```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA


MARK G. McNEILL, et al.          :         CIVIL ACTION
                                 :
          v.                     :
                                 :
BOROUGH OF FOLCROFT, et al.      :         NO. 13-3592
```

                             MEMORANDUM

Bartle, J.                                           November 12, 2014

        Plaintiffs, the administrators of the estates of Mark Richard McNeill ("McNeill") and Michael J. Taylor ("Taylor"), bring this action against three defendants:  the Borough of Folcroft, its Police Chief Robert Ruskowski, and Police Officer Michael Fiocco. Their complaint alleges violations of 42 U.S.C. § 1983 against the Borough and Ruskowski and of 42 U.S.C. § 1985 against Ruskowski. They also assert supplemental state law negligence claims against all three defendants under the Pennsylvania Wrongful Death and Survival statutes, 42 Pa. Cons. Stat. Ann. §§ 8301 and 8302.[1]

        We previously dismissed Count I of the complaint insofar as that Count asserted a claim against Ruskowski under § 1983 for substantive due process violations under the Fourteenth Amendment

---

1. Plaintiffs' complaint contains negligence counts against all three defendants as well as separate counts under the Pennsylvania Wrongful Death Act and the Pennsylvania Survival Act.  We previously dismissed plaintiffs' negligence claim against Ruskowski but left intact their negligence claims against Fiocco and the Borough.  For present purposes we are treating plaintiffs' Wrongful Death Act and Survival Act counts as part of plaintiffs' negligence claims against the Borough and Fiocco.

based on a state-created danger and on supervisory liability as a participant in any violation of the decedents' rights.[2]  We also dismissed Count I insofar as it asserted a claim against Ruskowski  Finally, we dismissed Count III of the complaint, which asserted a negligence claim against Ruskowski.  Because Counts VI and VII of the complaint asserted an entitlement to statutory damages based upon common-law negligence claims, and because we have dismissed plaintiffs' negligence claim against Ruskowski, Counts VI and VII are no longer in issue insofar as they are based on Ruskowski's alleged negligence.

Before the court is the motion of defendants for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, on plaintiffs' § 1983 claim against Ruskowski and the Borough, and their negligence claims against Fiocco and the Borough.

I.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

---

2.  In their complaint, plaintiffs charged defendants with Fourteenth Amendment substantive due process violations as well as violations of the Fourth and Eighth Amendments to the United States Constitution as incorporated by the Fourteenth Amendment. However, plaintiffs have since voluntarily withdrawn the Fourth and Eighth Amendment claims.  As a result, the only remaining basis for their § 1983 claim is a Fourteenth Amendment substantive due process violation.

P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).[3]

A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). Summary judgment is granted where there is insufficient record evidence for a reasonable factfinder to find for the plaintiffs. Id. at 252. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the factfinder could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.

When ruling on a motion for summary judgment, we may only rely on admissible evidence. See, e.g., Blackburn v. United Parcel Serv., Inc., 179 F.3d 81, 95 (3d Cir. 1999). We view the

---

3. Rule 56(c) states:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by ... citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials; or ... showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c).

facts and draw all inferences in favor of the nonmoving party.  In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).  However, "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment."  Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990).

II.

The following facts are undisputed or viewed in the light most favorable to the plaintiffs as the nonmovants.  Michael Fiocco completed six months of training at the police academy at Delaware County Community College in June 2011 and was hired in August 2011 to work on a part-time basis for the Borough of Millbourne.  In November 2011 the Borough of Folcroft hired him to work on a part-time basis.  By the time he began his employment with Folcroft, Fiocco had completed some 100 to 150 hours of on-the-job training provided by Millbourne.

During his time at the police academy, Fiocco received training in the proper conduct of high-speed pursuits.  Folcroft provided no additional formal training on this subject and had no standard training curriculum.  Instead, new officers including Fiocco received "on-the-job training," accompanying more experienced officers as they responded to various incidents.

When he began working for Folcroft, Fiocco was provided with a written copy of its pursuit policy (the "pursuit policy"),

along with copies of its other policies and procedures. The pursuit policy defined "vehicular pursuit" as follows:

> "VEHICULAR PURSUIT" – An active attempt by a police officer operating a motor vehicle to apprehend one or more occupants of a motor vehicle when the driver of the motor vehicle is resisting the apprehension by maintaining or increasing their speed or by ignoring the police officer's audible and visual signals to stop.

The pursuit policy stated in relevant part that "[p]ursuing officer shall immediately make use of both emergency lights and siren" and "[t]he officer shall immediately notify dispatch" of the details of the pursuit. No Folcroft employee ever discussed or reviewed the pursuit policy with Fiocco, and it was not the police department's standard procedure to do so.

At approximately 9:30 p.m. on the evening of December 9, 2011, Fiocco was on duty and had stopped at a red light in his patrol car when he observed a vehicle traveling at a high rate of speed. After activating his car's lights and siren, he followed the vehicle and caught up to it near the intersection of Chester Pike and East Boone Avenue. In response, the vehicle's driver, Marquis Thompson, pulled his vehicle over to the side of the road, and Fiocco pulled over behind it. Fiocco turned off the police car's siren but left on his overhead emergency lights. He also activated his vehicle's spotlight. Fiocco noticed that Thompson's

brake lights were on.  To Fiocco, this meant that Thompson had not put his vehicle in park.

Fiocco picked up the microphone of his patrol car's radio and prepared to advise the Delaware County Communications Center ("DelCom") that he had stopped a vehicle.  At this point, Fiocco saw Thompson look into his rearview mirror and then the driver's side mirror, activate his left turn signal, and drive back onto the highway.  Still holding the radio microphone in one hand, Fiocco maneuvered his car onto the highway and began to pursue Thompson, who rapidly accelerated his vehicle to speeds well above the posted speed limit.  Fiocco followed directly behind him. Knowing that he could not communicate on his police radio and operate his vehicle's siren at the same time, Fiocco used his radio to contact DelCom and alert them to the pursuit.  Fiocco never re-activated his siren after the initial stop.

Approximately thirteen to fifteen seconds after Fiocco began his pursuit of Thompson following the initial stop, Thompson, still traveling at a high rate of speed, ran a red light.  As he did so, his vehicle struck two pedestrians, Mark McNeill and Michael Taylor.  Taylor was pronounced dead at the scene of the accident while McNeill died at the hospital the next day.  Both McNeill and Taylor were fifteen years old at the time of their deaths.

III.

We first address plaintiffs' claim against Robert Ruskowski, Folcroft's Police Chief, under 42 U.S.C. § 1983 for a violation of substantive due process under the Fourteenth Amendment based on his supervisory liability in his role as a policymaker. It is plaintiffs' position that Ruskowski can be held liable under § 1983 for a violation of substantive due process on the ground that he maintained a policy of not instructing his officers on the proper conduct of high-speed chases and that he failed properly to train the officers in the conduct of such pursuits. Plaintiffs argue that it was this policy that resulted in the deaths of McNeill and Taylor.

Although § 1983 does not create substantives rights, it provides a remedy for deprivations of constitutional rights or other rights established under federal law.[4] Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). A plaintiff seeking relief under § 1983 must demonstrate that he or she has been subjected to such a

---

4. In relevant part, § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

deprivation and that the deprivation was committed by a person who acted under color of state law.  Id. (internal citations omitted).

Section 1983 creates liability against state actors "only for their own unconstitutional conduct," not for that of their subordinates.  Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316 (3d Cir. 2014).  However, a supervisor-defendant may be held liable for the unconstitutional acts of his subordinates in two separate contexts.  Id.  First, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or as the person in charge, had knowledge of and acquiesced" in the violations.  Id. (citing A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004)).  Second, a supervisor-defendant may be held liable "if it is shown that such defendant[], 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'"  Id. (citing A.M. ex rel. J.M.K., 372 F.3d at 586).  This second type of liability is generally considered to encompass "failure to train" and "failure to supervise" claims.  Id.  At issue is whether Ruskowski falls within this second category.  We have previously dismissed the complaint as to allegations that Ruskowski participated in the violation of the decedents' rights.

The parties dispute whether Ruskowski can properly be considered a policymaker for the purpose of holding him individually liable under § 1983. Defendants urge that he is not, and that § 1983 liability on the basis of his supervisory liability as a policymaker is therefore inappropriate. However, we need not resolve this issue. Even if Ruskowski is a policymaker as plaintiffs urge, his conduct does not meet the remaining requirements for supervisory liability under § 1983.

Our Court of Appeals has established a four-part test for determining whether an official may be held liable under § 1983 for failure to supervise. In addition to identifying a "supervisory policy or practice" that the defendant failed to employ, a plaintiff must prove that:

> (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure.

Barkes, 766 F.3d at 317 (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989); Brown v. Muhlenberg Twp., 269 F.3d 205 (3d Cir. 2001)). A failure properly to train subordinates may constitute the "supervisory policy or practice" at issue. See Brown, 269 F.3d at 217.

The record contains no evidence that Ruskowski failed to employ a "supervisory policy or practice" – a threshold requirement under the Third Circuit's framework. Plaintiffs argue that Ruskowski failed to employ a practice of training his officers on proper high-speed pursuit procedures. This argument fails because there is nothing in the record to support it. To the contrary, the record shows that it was Ruskowski's policy to provide copies of the pursuit policy to new officers and instruct them to read it. Fiocco recalls receiving a copy of this policy. Plaintiffs do not dispute that the pursuit policy was appropriate or that it met the statutory requirements set forth by the state's motor vehicle code. Although Ruskowski did not review the pursuit policy with new officers or provide specific training on pursuits, he reasonably relied on the training received by his officers including Fiocco at the police academy. Fiocco himself had completed his police academy training less than six months before the incident at issue and had also received between 100 and 150 hours of training in Millbourne Borough, albeit this training was not specific to pursuits. A practice of providing new officers with a proper written pursuit policy and instructing them to read it, coupled with a reliance on the recent training those officers had previously received on this subject, cannot be characterized as a "failure to train."

For this reason, we conclude that plaintiffs have failed to identify a "supervisory policy or practice" that would give rise to supervisory liability under § 1983.  See Barkes, 766 F.3d at 317.

Even if we were to conclude that plaintiffs had properly identified a "supervisory policy or practice," there are no facts in the record to satisfy the four-prong test necessary for a finding of supervisory liability.  The record does not support a conclusion that Ruskowski's policy "created an unreasonable risk of a constitutional violation."  See Barkes, 766 F.3d at 317.  To the contrary, it is clear that the pursuit policy was adequate and that Fiocco was provided with a copy of it.  There is also no evidence that Ruskowski was aware of, or indifferent to, any unreasonable risk.  See id.  Finally, there is no proof that any failure to train by Ruskowski was the cause of McNeill and Taylor's deaths.  See id.  Nothing in the record indicates that Fiocco was unaware of the importance of siren use in high-speed pursuits.  Nor does the record contain support for plaintiffs' contention that Ruskowski's failure to train prevented Fiocco from properly identifying the chase as a pursuit and thereby caused Fiocco's failure to employ his vehicle's siren.  In sum, no reasonable jury could find Police Chief Ruskowski liable under § 1983.

Defendants also argue that Ruskowski is entitled to qualified immunity. The qualified immunity doctrine "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The qualified immunity analysis is "composed of two constituent questions: first, whether the plaintiff suffered a deprivation of a constitutional or statutory right; and second, if so, whether that right was 'clearly established' at the time of the alleged misconduct." Barkes, 766 F.3d at 326. A defendant is entitled to qualified immunity if the answer to either question is "no." Id. Thus, the question "whether plaintiff's allegations, if true, establish a constitutional violation" is a threshold issue in the qualified immunity analysis. Hope v. Pelzer, 536 U.S. 730, 736 (2002) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). Having determined that the record is devoid of any evidence to support a constitutional claim against Ruskowski, we need not reach the issue of qualified immunity.

IV.

We next turn to plaintiffs' § 1983 substantive due process claim against the Borough of Folcroft. Plaintiffs take the position that Folcroft, like Ruskowski, maintained a policy of

failing to train police officers on proper conduct during police pursuits. They urge that this omission prevented Fiocco from recognizing the incident at issue as a pursuit, thereby resulting in his failure to activate his vehicle's siren.

While "a city may not be held vicariously liable under § 1983 for the actions of its agents," a municipality can be held liable nonetheless "if its policy or custom is the 'moving force' behind a constitutional violation." Sanford v. Stiles, 456 F.3d 298, 314 (3d Cir. 2006) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 400 (1997)). For such liability to exist, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional violation." Brown v. Pa. Dep't of Health Emergency Med. Servs. Training Inst., 318 F.3d 473, 482 (3d Cir. 2003) (citing Canton v. Harris, 489 U.S. 378, 385 (1989)). In a case such as this one, where a substantive due process claim arises out of a police pursuit, a municipality may be found liable even if no *individual officer* violated the Constitution, so long as there has been an underlying violation of the plaintiff's constitutional rights. Brown, 318 F.3d at 482; Fagan v. City of Vineland, 22 F.3d 1283, 1291-92 (3d Cir. 1994). For the reasons explained in the discussion of Ruskowski, there is no evidence in the record which can support a claim against the Borough under § 1983.

V.

Finally, plaintiffs have pending supplemental state law negligence claims against Fiocco and the Borough under the Pennsylvania Wrongful Death and Survival Acts.  Both defendants move for summary judgment on these claims.

Plaintiffs take the position that Fiocco was negligent in improperly initiating a pursuit, failing to activate his vehicle's siren, proceeding with the pursuit even though doing so presented a risk of harm, failing to maintain a proper lookout, failing to make proper observations, and driving too fast.  They also assert that he was negligent per se because his conduct violated 75 Pa. Cons. Stat. Ann. § 3105.  The Pennsylvania Political Subdivision Tort Claims Act, which generally provides immunity from suit to local agencies and their agents and employees acting within the scope of their official duties, has an exemption from immunity where injuries are caused by the operation of a vehicle in the possession or control of the agency.  42 Pa. Cons. Stat. Ann. §§ 8541, 8542(b)(1), 8545.  Having reviewed the record, we conclude that genuine disputes of material fact exist with respect to plaintiffs' claims that Fiocco was negligent.  We will therefore deny defendant's motion for summary judgment on plaintiffs' negligence claim against Fiocco.

Plaintiffs' negligence claim against Folcroft is grounded on several theories.  There is an absence of facts to

support plaintiffs' negligence claim against the Borough, except with regard to plaintiffs' theory that the Borough is vicariously liable for Fiocco's alleged negligence.  As a result, defendant's motion for summary judgment on plaintiffs' negligence claim against the Borough will be granted except insofar as that claim alleges negligence based on a theory of vicarious liability.  <u>See</u> Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. Ann. § 8541 et seq.

## VI.

In sum, we will grant the motion of defendants for summary judgment in part, and we will deny it in part.  We will grant summary judgment as to Count I, which asserts liability under 42 U.S.C. § 1983 against Police Chief Ruskowski, and as to Count II, which asserts municipal liability under 42 U.S.C. § 1983 against the Borough of Folcroft.  We will also grant summary judgment as to Count IV, plaintiffs' negligence claim against the Borough, except insofar as Count IV asserts negligence based on a theory of vicarious liability.  We will deny summary judgment as to Count IV, plaintiffs' negligence action against the Borough, insofar as it alleges negligence based on a theory of vicarious liability, and we will deny summary judgment as to Count V, which asserts a negligence claim against Fiocco.  With respect to Counts VI and VII, which assert claims for statutory damages under the Pennsylvania Wrongful Death Act and Survival Act, we will grant

summary judgment insofar as these counts relate to plaintiffs' negligence claim against the Borough of Folcroft based on any theory other than vicarious liability.  We will deny summary judgment as to Counts VI and VII insofar as they relate to plaintiffs' negligence claim against the Borough based on a theory of vicarious liability and to plaintiffs' negligence claim against Police Officer Michael Fiocco.